# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CAMILLE GROSDIDIER,

   Plaintiff,

     v.

CHAIRMAN, BROADCASTING BOARD OF GOVERNORS,

   Defendant.

Civil Action No. 08-1553 (CKK)

## MEMORANDUM OPINION
(May 16, 2011)

Plaintiff Camille Grosdidier ("Grosdidier") filed this action against her employer, the Broadcasting Board of Governors ("BBG"), alleging that she was unlawfully discriminated against based on her race, age, sex, and national origin and unlawfully retaliated for complaining about discrimination in the workplace. On March 28, 2011, the Court granted-in-part and denied-in-part Defendant's motion for summary judgment, entering judgment for Defendant as to all of Grosdidier's claims except for her claim that Defendant retaliated against her by reducing her editing responsibilities after October 5, 2007. Grosdidier has since filed a [31] Motion to Reconsider or in the Alternative to Amend Judgment to Permit Appeal, in response to which Defendant has filed an opposition, and Grosdidier has filed a reply.

Grosdidier asks the Court to reconsider its grant of summary judgment to Defendant on her claim that she was not selected for a promotion in 2006 in retaliation for her opposition to conduct that violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* The Court held that Grosdidier's complaints about conduct occurring in

her workplace did not constitute protected activity for purposes of Title VII's antiretaliation provision because her belief that she was being subjected to a hostile work environment was objectively unreasonable. Grosdidier contends that the Court erred by failing to give her notice that it would rule on this claim, applying the wrong legal standard, and overlooking one of Grosdidier's complaints as evidence of protected activity. Grosdidier therefore asks the Court to reconsider its ruling or, in the alternative, to amend its order so as to permit Grosdidier to take an interlocutory appeal. For the reasons explained below, the Court concludes that Grosdidier was properly on notice of the need to present evidence in support of her retaliation claim, that the Court did not err in determining that Grosdidier's complaints were objectively unreasonable, and that Grosdidier's other alleged complaint does not constitute activity protected by Title VII. Therefore, the Court declines to reconsider its prior ruling or certify it for interlocutory appeal.

## I. BACKGROUND

The following facts, which are limited to the issues relevant to the pending motion, are drawn from the Court's prior Memorandum Opinion and from the record produced by the parties at summary judgment. Camille Grosdidier has worked as an International Broadcaster with the French to Africa Service of the Voice of America ("VOA") since 1987. Def.'s Stmt. ¶ 2. Grosdidier is a white female of French national origin who is a naturalized citizen of the United States. *Id.* ¶ 1. The BBG encompasses all U.S. civilian international broadcasting, including the VOA, Radio Free Europe, and other networks. *Id.* ¶ 14. BBG broadcasters distribute programming in sixty languages to an estimated weekly audience of 175 million people via radio, television, the internet, and other news media. *Id.* The VOA's French to Africa Service primarily competes with French, British, and local African radio and media services. *Id.* ¶ 15.

Throughout most of the time relevant to this litigation, the Chief of the French to Africa Service was Idrissa Seydou Dia ("Dia"). *See* Pl.'s Ex. 6 (Dia Dep.) at 5. Dia had been acting in that capacity since sometime in 2003. *Id.* Between 1992 and 2002, Grosdidier filed a series of equal employment opportunity ("EEO") complaints about discrimination and harassment in the workplace. *See* Def.'s Ex. Y (Aff. of Camille Grosdidier) at 1-2. In September 2002, Grosdidier filed a complaint about her nonselection for a GS-13 International Broadcaster position in the French to Africa Service, alleging discrimination based on her sex, color, and reprisal for engaging in EEO activity. *Id.* at 2. That complaint was dismissed by an administrative judge. *See* Pl.'s Ex. 2 (Grosdidier Dep.) at 37. Grosdidier also complained about an incident in 2000 when her supervisor, then-Chief Claude Porsella, removed her from editing duties. *See id.* at 32-33. She was eventually reinstated to editing duties. *Id.* at 33-34. Grosdidier contends that her EEO activity was generally known within the French to Africa Service. *See* Def.'s Ex. Y (Aff. of Camille Grosdidier) at 2.

Around 2004 and 2005, Grosdidier complained to her supervisors about what she perceived to be a sexually charged atmosphere in the French to Africa Service. Dia had a particularly friendly relationship with one female producer in the office, who called Dia "Sexy Papa" and whom Dia called "Sexy Mama." *See* Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 109. Ferdinand Ferella, who worked as a managing editor for the French to Africa Service, described this as "something of a joke." *Id.* Dia testified that it did not have any sexual connotation, but instead resulted from Dia's mistranslation of the Jimi Hendrix song "Foxy Lady." *See* Pl.'s Ex. 6 (Dia Dep.) at 40-41. Grosdidier objected to the banter between Dia and this employee. Grosdidier also complained about another female employee who called Ferella "maître," or

3

"master," which she thought was inappropriate. Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 110-11; Pl.'s Ex. 2 (Grosdidier Dep.) at 190. This conduct stopped after Grosdidier complained. Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 115.

Grosdidier complained about hugging and kissing in the workplace that she perceived to be unprofessional and outside the bounds of what was acceptable in French culture. Pl.'s Ex. 2 (Dep. of Camille Grosdidier) at 185-86. On May 3, 2005, Grosdidier sent an email to Dia complaining about one particular female co-worker who gave a "big, long, fat hug" to a Senegalese man visiting the office; Grosdidier objected to what she perceived as the employee's "pressing need to press herself against every man in sight on the slightest pretext - especially strangers - and the way this has 'sexualized' our French Branch office." Pl.'s Ex. 30 (5/3/2005 Email from Grosdidier to Dia) at 17.

Grosdidier also complained about an email sent around the office in April 2004 depicting a man straddling a cannon, which she perceived to be sexually suggestive. *See* Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 117; Pl.'s Ex. 29 at 12 (4/13/2004 Email from Grosdidier to Eric Agnero) ("Thanks for this edifying picture of a man with a giant object between his legs."). Dia told Grosdidier that the employee who sent the email did not see anything sexual about the photograph, which depicted a famous musician from his home country. *See* Pl.'s Ex. 29 at 13; Pl.'s Ex. 6 (Dia Dep.) at 36. In November 2003, the same employee had sent an email around the office containing a picture of an outdoor marketplace in which brassieres were prominently displayed. *See* Pl.'s Ex. 29 at 14. Grosdidier also complained about one male employee who wore short shorts to the office; Ferella agreed in his deposition testimony that his attire was unprofessional. *See* Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 118-19.

4

Dia took informal action in response to Grosdidier's complaints, warning people during a morning office meeting not to go overboard with physical contact and to keep things professional because "someone" might complain. *See* Pl.'s Ex. 6 (Dep. of Idrissa Dia) at 37-38. Dia denies identifying Grosdidier as the potential complainant. *See id.* at 132. Dia told Ferella that he was frustrated by Grosdidier's complaints because he did not believe the conduct was sexual in nature. *See* Pl.'s Ex. 24 (Dep. of Ferdinand Ferella) at 115-16. Dia testified in his deposition that he was upset at Grosdidier for tarnishing his warm relationship with the employee who called him "Sexy Papa." *See* Pl.'s Ex. 6 (Dep. of Idrissa Dia) at 41.

In March 2006, Grosdidier interviewed for a vacant position in the French to Africa Service as a GS-13 International Broadcaster. However, she was not selected for the position, and on July 5, 2006, she timely filed a formal complaint alleging that she was not selected because of her sex, race, national origin, and her prior equal employment opportunity ("EEO") activity. *See* Def.'s Ex. GG (Formal Complaint of Discrimination). In that formal complaint, Grosdidier listed "Dec. 10, 2002" as the date of her prior EEO activity. Grosdidier litigated this complaint before the Equal Employment Opportunity Commission but was denied relief.

On December 27, 2007, Grosdidier filed a second formal complaint of discrimination with the BBG. *See* Def.'s Ex. W (Formal Complaint of Discrimination). In her formal complaint, Grosdidier claimed that she had been discriminated against on the basis of her sex, national origin, and engaging in prior EEO activity in 2000, 2001, and 2006. *See id.* She claimed that the dates of the alleged discriminatory acts were November 20, 2007 and from January 2007 to the present (i.e., December 27, 2007). *Id.* Grosdidier complained about the fact that her position description had not been updated, that her professional responsibilities had been

5

reduced, and that her supervisor had refused to directly interact with her. *Id.* She subsequently amended her complaint regarding a letter of admonition she received on April 1, 2008.

## II. LEGAL STANDARD

Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court may revise its own interlocutory orders "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) recognizes the inherent power of the courts to reconsider interlocutory orders "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). The "as justice requires" standard may be met where the court has patently misunderstood the parties, strayed far afield of the issues presented, or failed to consider a controlling or significant change in the law or facts since the submission of the issue. *See Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). In the final analysis, the district court must ask whether relief upon reconsideration is "necessary under the relevant circumstances." *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (internal quotation marks omitted). In this regard, the court's discretion is broad. *Id.*

## III. DISCUSSION

Grosdidier's motion to reconsider focuses almost entirely on the Court's ruling that her complaints about sexually suggestive conduct in her workplace during 2004 and 2005 did not constitute protected activity for purposes of Title VII because no reasonable employee could believe that the conduct about which she complained amounted to a hostile work environment under Title VII. First, Grosdidier argues that Defendant did not raise this argument in its motion for summary judgment and that the Court improperly granted summary judgment on this issue

*sua sponte* without affording her notice and an opportunity to respond. Second, Grosdidier contends that the Court applied the wrong standard in determining her complaints were not protected activity because Title VII encourages employees to complain about misconduct in the workplace before a hostile work environment develops. Third, Grosdidier argues that the Court improperly overlooked evidence relating to a complaint she made in August 2005 that could have constituted protected activity to support her retaliation claim. The Court shall address each of these issues below.

    A.    *Grosdidier Had Notice of the Need to Present Evidence Relating to Her Retaliation Claim*

Grosdidier contends that Defendant never argued in its motion for summary judgment that her complaints about her workplace in 2004 and 2005 were not protected activity and therefore she was not on notice that she needed to come forward with all her evidence in support of this aspect of her retaliation claim. Grosdidier relies on *McBride v. Merrell Dow & Pharmaceuticals, Inc.*, 800 F.2d 1208 (D.C. Cir. 1986), for the proposition that "[w]hile district courts possess the authority to enter summary judgment against a party *sua sponte*, that authority may only be exercised 'so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Id.* at 1212 (internal citation omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)); *accord Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (same). Both *McBride* and *Sussman* involved situations where the district court awarded summary judgment on a basis that was not presented in a motion for summary judgment. *See Sussman*, 494 F.3d at 1117 (vacating summary judgment in FOIA case with respect to documents for which defendant agency failed to affirmatively move for summary

7

judgment); *McBride*, 800 F.2d at 1212-13 (vacating summary judgment against plaintiff's libel claim where ruling was based on lack of actual malice but defendants moved for summary judgment only on the asserted truth of the statement at issue). By contrast, where a defendant moves for summary judgment as to all essential elements of a plaintiff's claim, the plaintiff is on notice of the need to present affirmative evidence in support of each of those elements.

In this case, it is inaccurate to characterize Defendant's motion for summary judgment as not raising the argument that Grosdidier's complaints about her workplace in 2004 and 2005 were not protected activity. Defendant argued that Grosdidier had failed to demonstrate retaliation with respect to her nonselection because she could not establish any causal connection between her nonselection and her filing of an EEO complaint in 2002, which was the most recent protected activity that Grosdidier had complained about in her formal complaint of discrimination. *See* Def.'s Mem. at 31-33. Therefore, Defendant's motion for summary judgment was based on the assumption that Grosdidier's post-2002 complaints were not protected activity and could not serve as the basis for Grosdidier's retaliation claim. This was a particularly reasonable assumption in light of the fact that Grosdidier had not listed her 2004 and 2005 complaints as protected activity in either of the formal complaints she filed with the BBG.[1] Defendant clearly intended to move for summary judgment with respect to every aspect of Grosdidier's retaliation claim, and therefore it was Grosdidier's obligation to come forward with evidence to support that claim, even if her theory of the claim was different than what was

---

[1] Indeed, it is unclear whether Grosdidier administratively exhausted her claim that her nonselection in 2006 was motivated by retaliation for 2004 and 2005 complaints about her workplace. The parties did not explicitly address this in their summary judgment briefs, and therefore there is no basis for the Court to address it here.

spelled out by Defendant's motion. Grosdidier obviously understood this obligation because she addressed the issue in her opposition brief and cited to evidence in the record supporting her claim that she engaged in protected activity in 2005. *See* Pl.'s Opp'n at 34 n.7 ("The Defendant appears to believe that the Plaintiff's claim is that the non-selection was premised on reprisal for her 2002 protected activity. The record, however, clearly demonstrates that Ms. Grosdidier engaged in protected activity with respect to the sexually charged environment in 2005, and that Mr. Dia expressed his anger about that protected activity contemporaneously.") (citations omitted); Pl.'s Stmt. ¶ 62 (describing Grosdidier's complaints about her workplace in 2004 and 2005). The Court then ruled on the sufficiency of this evidence after Defendant specifically addressed the issue in its reply brief. If Grosdidier believed that Defendant was improperly raising a new argument in its reply, she could have asked the Court for leave to file a surreply; the fact that she did not make any such request suggests that she understood this issue to have been properly raised in Defendant's opening brief.

That Grosdidier had an opportunity to present all evidence relevant to her claim is demonstrated by the fact that her affidavit in support of her motion to reconsider adds very little beyond what she presented in her opposition brief. Grosdidier's new affidavit relies mostly on the same conduct about which she complained earlier: excessive hugging and kissing by other coworkers during greetings, the use of the phrases "Sexy Papa" and "Sexy Mama" by Dia and a female coworker, and a female coworker's use of the term "maître" or "master" to address Dia. *See* Pl.'s Aff. in Support of Her Rule 59(e) Mot. ¶ 5. Grosdidier adds only a few conclusory allegations about the sexually charged nature of the work environment and the following discrete incidents: (a) an incident in March 2003 when a male coworker told Grosdidier she contributed

9

"too much" during morning meetings, implying it was "too much" for a female; (b) "several events" where Grosdidier found pornography on an open window of a computer in the recording studio; (c) "[t]he circulation of misogynistic jokes"; (d) the circulation of news articles featuring harsh treatment of women; and (e) a period of approximately two weeks when one of the producers would stand at Grosdidier's desk and ask where his hug was, causing Grosdidier to tell him that she was not comfortable with hugging in the workplace. *Id.* ¶¶ 3-6. The Court declines to reconsider its ruling in light of Grosdidier's new evidence because Grosdidier could have and should have presented this evidence as part of her original opposition to Defendant's motion for summary judgment on her retaliation claim. However, as explained below, the Court shall make an alternative ruling that takes into account the new allegations raised by Grosdidier.

> B. *Grosdidier's Complaints About Her Work Environment Were Not Protected Activity*

The Court ruled in its prior Memorandum Opinion that although Grosdidier appeared to have a good faith basis for opposing what she perceived to be offensive conduct in the workplace, no reasonable employee could believe that the conduct about which she complained amounted a hostile work environment under Title VII. Grosdidier argues that the Court's ruling is in error, for two reasons. First, Grosdidier argues that employees are encouraged to complain about hostile conduct in the workplace before it becomes actionable as a hostile work environment, and therefore her complaints should be deemed protected for purposes of Title VII's antiretaliation clause. Second, Grosdidier argues that the Court improperly focused on whether a hostile work environment actually existed instead of whether Grosdidier reasonably believed there was one. The Court shall address Grosdidier's second argument first.

1. <u>Grosdidier's Belief that the Conduct She Opposed Violated Title VII Was Objectively Unreasonable</u>

As the Court recognized in its prior Memorandum Opinion, Title VII's antiretaliation provision protects two kinds of activity: (1) participation in EEO proceedings, such as making a charge, testifying, assisting, or otherwise participating in an EEO investigation, proceeding, or hearing; and (2) opposition to "any practice made an unlawful employment practice" by Title VII. *See* 42 U.S.C. § 2000e-3(a). The D.C. Circuit has held that "an employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981)). In other words, a plaintiff need not prove that the conduct she opposed actually violated Title VII; "the fact that a nonfrivolous claim is ultimately resolved in favor of management does not justify an attempt to suppress the claim by penalizing the employee who raised it." *Parker*, 652 F.2d at 1020. "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

In this case, it is significant that Grosdidier's complaints in 2004 and 2005 were not about any specific discriminatory action; rather, they focused on incidents that she believed contributed to the sexually charged nature of her workplace. Therefore, the "unlawful employment practice" that Grosdidier was opposing could only be characterized as harassment in the form of a hostile work environment. The Supreme Court has repeatedly stated that in order for a hostile work environment to constitute discrimination under Title VII, the workplace must be "permeated with

'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993) (citations omitted) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* . . . because of . . . sex." . . . [T]he statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and the opposite sex. The prohibition on harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (emphasis original). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (internal citation omitted).

In finding that Grosdidier's complaints were not protected activity, the Court held that Grosdidier could not have reasonably believed that the conduct about which she was complaining amounted to a hostile work environment. Grosdidier's complaints were focused primarily on conduct that was neither directed at Grosdidier nor objectively offensive, such as two emails that Grosdidier interpreted as sexually suggestive but which were also susceptible to innocent interpretations. Grosdidier also complained about voluntary, flirtatious banter between her male and female coworkers as well as hugging and kissing during greetings that Grosdidier felt exceeded the bounds of cultural courtesy. Although such conduct is not appropriate in the

12

modern workplace, it falls far below the standard of conduct prohibited by Title VII. None of the actions about which Grosdidier complained suggest discriminatory animus or hostility towards women in the office. Under such circumstances, Grosdidier's belief that she was being subjected to a hostile work environment was objectively unreasonable.

As the Court noted above, Grosdidier seeks to bolster her allegations of a hostile work environment with a new affidavit in support of her motion to reconsider. As noted above, the Court declines to consider these newly minted allegations because they should have been presented as part of Grosdidier's opposition to Defendant's motion for summary judgment. Alternatively, even considering Grosdidier's new allegations, there is little evidence that her workplace was permeated with discriminatory intimidation, ridicule, and insult sufficient to create an abusive working environment. Grosdidier's new allegations focus on a few isolated incidents in which she found pornography on office computers and the circulation of misogynistic jokes and news stories about the harsh treatment of women; none of these alleged actions were specifically directed at Grosdidier.[2] Grosdidier also identifies one incident in March 2003 in which a coworker suggested that she contributed too much for a female journalist and an undated incident over a two-week period when one of the producers stood at her desk and asked her to hug him, which apparently stopped after Grosdidier explained that this made her uncomfortable. Although this conduct was directed at Grosdidier, it still falls well short of an actionable hostile work environment claim. Furthermore, it is unclear from the record at

---

[2] Grosdidier refers to "[t]he circulation of news articles reflecting women being treated in deplorable ways, such as one case that I remember clearly, a women being forced to marry the man who had raped her." *See* Pl.'s Aff. in Support of Her Rule 59(e) Mot. ¶ 5(f). Without any additional context, the Court cannot conclude that the circulation of news articles within a news agency suggests discriminatory intimidation, ridicule, or insult.

summary judgment or Grosdidier's new affidavit whether she ever complained about these newly alleged incidents. *See* Pl.'s Stmt. ¶ 62 (describing complaints only about sexually suggestive photographs distributed to employees, a particular female coworker's flirtacious conduct, use of the terms "Sexy Papa" and "Sexy Mama" by Dia and another female coworker, and a complaint by a union representative about attempted retaliation). Without evidence that Grosdidier opposed this conduct, there is no basis for the Court to conclude that Grosdidier engaged in protected activity. Accordingly, the Court declines to reconsider its ruling that Grosdidier did not engage in protected activity that can be causally connected to her nonselection for a promotion in 2006.

> 2. <u>Grosdidier's Complaints Were Not Protected Activity By Virtue of the Possibility that Her Workplace Would Eventually Become Actionably Hostile</u>

Grosdidier alternatively argues that even if she could not have reasonably believed her workplace was actionably hostile under Title VII when she complained about it, her complaints should be deemed protected activity because employees are encouraged to complain about sexually harassing behavior before it becomes actionable. In making this argument, Grosdidier is tacitly conceding that her workplace was not actionably hostile when she complained about it. Grosdidier relies on the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), in which the Court limited employers' vicarious liability for a supervisor's harassment of a subordinate where the employer can establish that it exercised reasonable care to prevent and correct any sexually harassing behavior and the employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. The Court stated that limiting employer liability would "serve Title VII's deterrent

purpose" by encouraging employees to "report harassing conduct before it becomes severe or pervasive." *Ellerth*, 524 U.S. at 764. Grosdidier therefore argues that her complaints should be protected because she reported harassing conduct before it evolved into a hostile work environment.

The problem with Grosdidier's argument is that it would dramatically expand the scope of protected activity under the opposition clause of Title VII, which protects only opposition to "any practice made an unlawful employment practice" under the statute. Courts have already placed a judicial gloss on the opposition clause by protecting opposition based on an employee's reasonable, good faith belief that the employment practice is unlawful. That construction of the statute provides a fair measure of protection for employees who believe they are witnessing unlawful conduct. Grosdidier's interpretation, however, would protect an employee's opposition to conduct that she reasonably believes is *not* prohibited by Title VII but which might, if left unchecked, some day ripen into an unlawful hostile work environment. That would provide protection for nearly all employee complaints about offensive conduct in the workplace, since practically every employee could argue that her workplace would have ultimately developed an actionably hostile atmosphere. But Title VII does not impose a general civility code for the American workplace, and the opposition clause of its antiretaliation provision should not be construed to protect nearly all employee complaints about sexually suggestive conduct at the office. The Fourth Circuit, the only court of appeals that appears to have addressed this question squarely, has also rejected Grosdidier's argument. *See Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 341-43 (4th Cir. 2006). Accordingly, the Court declines to reconsider its ruling on this basis.

### 3. The Court Shall Not Certify An Interlocutory Appeal

If the Court does not reconsider its prior rulings, Grosdidier requests that the Court amend its order so as to enable her to take an interlocutory appeal of the Court's ruling awarding summary judgment to Defendant on her nonselection claim. Pursuant to 28 U.S.C. § 1292(b), "[w]hen a district judge . . . shall be of the opinion that [an interlocutory] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." This action would enable Grosdidier to apply to the court of appeals for permission to appeal the ruling. "A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'" *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)). The Court is not persuaded that there is a controlling question of law as to which there is a substantial ground for difference of opinion or that an immediately appeal would advance the ultimate termination of the litigation. Accordingly, the Court declines to certify its summary judgment ruling for interlocutory appeal.

Grosdidier also suggests that the Court certify its summary judgment ruling as a final judgment pursuant to Rule 54(b). Under that rule, "[w]hen an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." "Only 'exceptional cases' merit Rule 54(b)'s direct entry, and the district court has discretion in

16

identifying such cases because of its 'familiarity with the case and with any justifiable reasons for delay.'" *Ben-Rafael v. Islamic Republic of Iran*, 718 F. Supp. 2d 25, 33 (D.D.C. 2010) (quoting *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998)). Ordinarily, the presumption against piecemeal appeals will be sufficient to deny certification under Rule 54(b). *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) ("Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."). There is sufficient factual and legal overlap between Grosdidier's remaining retaliation claim and the claims the Court denied at summary judgment to conclude that separate appeals would be an inappropriate use of judicial resources. Accordingly, the Court declines to certify its summary judgment ruling as a final order under Rule 54(b).

  C. *Evidence of Grosdidier's Complaint About Retaliation in August 2005*

  In a short paragraph near the end of her motion to reconsider, Grosdidier argues that the Court overlooked the fact that in August 2005, Grosdidier had a meeting with Dia to address discipline that he was contemplating assessing against her, during which Grosdidier's union representative complained about the potential for retaliation. Grosdidier argues that this complaint should have been considered by the Court as protected activity in support of her retaliatory nonselection claim. The Court did not specifically address this factual claim in its prior Memorandum Opinion. The reason for that omission, however, was that the complaint at issue was not actually made in opposition to any discriminatory or retaliatory conduct.

  Grosdidier relies on paragraph 62(c) of her statement of material facts, which read, "In August 2005, Ms. Grosdidier's union representative informed Mr. Dia that it appeared he was

17

attempting to retaliate against Ms. Grosdidier by considering discipline against her." Pl.'s Stmt. ¶ 62(c). However, the evidence Grosdidier cited in support of this statement does not actually indicate that Grosdidier's union representative accused Dia of retaliation. Dia testified at his deposition that he called a meeting with Grosdidier to admonish her for disobeying instructions from managing editor Ferdinand Ferella regarding content on a sports program. *See* Pl.'s Ex. 6 (Dia Dep.) at 120-21. Dia testified that Grosdidier agreed it would not happen again and that no formal reprimand was placed in Grosdidier's file. *Id.* at 121. Dia did testify that he wrote down what had occurred during the meeting and that Grosdidier's union representative complained about his writing down what occurred and accused him of setting up Grosdidier for reprisal. *Id.* at 121-22. Dia denied the allegation and testified that he did not know what the union representative meant. *Id.* at 122-23. From this testimony, it appears that the union representative was not accusing Dia of engaging in retaliatory conduct, but rather of improperly keeping records to make it easier to sanction her in the future. Therefore, the union representative's complaint cannot be considered opposition to a practice made unlawful by Title VII. Accordingly, there is no basis for the Court to reconsider its ruling based on this incident.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to reconsider its summary judgment ruling. The Court finds that Grosdidier was properly on notice of the need to present evidence in support of her retaliation claim and therefore did not err by ruling that Grosdidier's evidence that she engaged in protected activity in 2004 and 2005 was insufficient. Furthermore, the Court finds that Grosdidier's belief that she was being subjected to a hostile work environment during that time period was objectively unreasonable in light of the record presented at summary judgment

18

and, alternatively, in light of Grosdidier's new allegations.  The Court also rejects Grosdidier's argument that her complaints should be deemed protected activity because her workplace might have ultimately developed an actionably hostile atmosphere if she did not complain.  Finally, the Court finds that statements by Grosdidier's union representative in August 2005 do not qualify as protected activity for purposes of Grosdidier's retaliation claim.  Therefore, the Court shall DENY Plaintiff's [31] Motion to Reconsider or in the Alternative to Amend Judgment to Permit Appeal.   An appropriate Order accompanies this Memorandum Opinion.

Dated: May 16, 2011                              /s/
                                                 **COLLEEN KOLLAR-KOTELLY**
                                                 United States District Judge